Karen C. KEEN and Chuck D. Keen,
Appellants and Cross–Appellees,

v.

W.G. RUDDY, an individual, and Ruddy,
Bradley & Kolkhorst, a partnership,
Appellees and Cross–Appellants.

Nos. S–2676, S–2842.

Supreme Court of Alaska.

Dec. 22, 1989.

A. Lee Petersen, Law Offices of A. Lee
Petersen, P.C., Anchorage, for appellants
and cross-appellees.

Michael T. Thomas, Robertson, Monagle & Eastaugh, Anchorage, for appellees and cross-appellants.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

MATTHEWS, Chief Justice.

## I. INTRODUCTION

Appellant Chuck Keen is the defendant in a collection suit in Juneau. Appellee W.G. Ruddy, an attorney, represents the plaintiff in that suit. Chuck Keen and his wife, Karen, filed the instant action against Ruddy, alleging that Ruddy's prosecution of the collection suit constitutes abuse of process, and seeking a declaration that Karen Keen owns 95% of a corporation that Ruddy sought to have sold for his client's benefit in the collection suit.

The trial court held that the Keens' suit was frivolous, and entered summary judgment against them. It also ordered them to pay Ruddy's full attorney's fees, and entered a $100.00 sanction against the Keens' attorney. We affirm.

## II. FACTS AND PROCEEDINGS

This case arose from attempts to enforce a $50,000.00 California judgment against appellant Chuck Keen. Appellee W.G. Ruddy represented Craig Denney in an action to seek satisfaction of that judgment in Juneau, Alaska. During the pendency of that suit, Mr. Denney, then an Ohio resident, died. His estate was administered in the Probate Court for Franklin County, Ohio. The trial court permitted Kevin A. Craine, Administrator for Craig Denney's Estate, to be substituted as plaintiff. Thereafter, the collection suit was referred to as *Craine v. Keen.*

To provide assets from which to satisfy the judgment, on August 26, 1986 the trial court ordered Chuck Keen to assign to the clerk of the court his interest in Alaska Trams, Inc., an Alaska corporation (hereafter "Alaska Trams"). Keen thereafter assigned his purported share of Alaska Trams, one quarter of one percent, to the clerk. Ruddy, however, claimed to possess documents tending to show that Keen actually owned at least half of the corporation. Accordingly, on November 10, 1986, Ruddy requested, on the estate's behalf, that the court issue an order to show cause why Keen should not be held in contempt of court.

On the date of the hearing to show cause Keen objected, claiming that he had been given insufficient notice of the hearing. The trial court characterized this claim as "groundless," but agreed nonetheless to reschedule the hearing for January 13, 1987, to assure adequate notice to Mrs. Keen, who claimed to own the bulk of Alaska Trams.

On August 8, 1986, before the trial court ordered Keen to assign his interest in Alaska Trams, Craine moved in the Ohio probate proceeding to terminate the Denney estate and for payment of his fees and costs. His motion noted, however, that several of the estate's creditors had expressed interest in keeping the estate open. Craine's resignation was orally accepted at a hearing on September 26, 1986. On November 6, 1986 (four days before Ruddy requested the order to show cause), the Ohio Probate Court accepted Craine's resignation, but ordered that the estate remain open without fiduciary so that the estate's lawsuits could still be pursued.

It is unclear when Ruddy learned of the Ohio court's order accepting Craine's resignation. Ruddy admits to receiving a copy of Craine's motion to resign, but claims not to have learned of the court's order until January 6, 1987, a week before the rescheduled hearing to show cause. In a later proceeding before Judge Katz, Keen did not dispute Ruddy's assertion that he had no knowledge of the Ohio order until just before the re-scheduled hearing.

On January 9, 1987, Keen filed a motion to dismiss the case, on the ground of lack of a real party in interest. The motion alleged that because Kevin Craine was no longer the administrator of the Denney estate, he was no longer a "real party in interest" under Civil Rule 17(a). The trial court rejected the motion, and ordered the matter continued until March 15, 1987, so

that the Denney estate's heirs and creditors could find another administrator. Denney's widow, Donna Denney, was thereafter substituted as administrator of the estate, and Keen's motion was denied as moot.

Before the new administrator was appointed, however, Mr. and Mrs. Keen filed the instant suit against Ruddy and his firm (collectively "Ruddy"). In their complaint the Keens alleged that Ruddy had willfully proceeded with the case of *Craine v. Keen* without a real party in interest in order to "'shut down' Chuck D. Keen," cause him financial and mental distress, deprive the Keens of their interest in their corporation, and to prevent construction of an aerial tramway on Mt. Juneau. Ruddy's motives, according to the complaint, were "spite, malice, vengeance and personal satisfaction."

In their complaint the Keens alleged that Ruddy's motion to require Chuck Keen to show cause was actually an abuse of process, aimed at depriving Karen Keen of her interest in Alaska Trams and at damaging Chuck Keen's business interests. They requested a declaration that Karen Keen owns 95% of the corporation, and that the court enjoin Ruddy from further litigation of the issues in *Craine v. Keen*. For the abuse of process claim, the Keens each requested both actual and punitive damages, and attorney's fees.

Ruddy moved for summary judgment. The trial court granted the motion. It also awarded full attorney's fees to Ruddy, expressly finding that the Keens sued in bad faith. The court ordered the Keens' attorney to pay a sanction of $100.00, stating that the purpose of the suit had been to avoid the proper forum for deciding the issue of ownership of Alaska Trams. The Keens now appeal the entry of summary judgment and order to pay attorney's fees and sanctions. Ruddy cross-appeals as to the sanctions order, contending that the sanction is too low.

## III. DISCUSSION

### A. *Abuse of Process*

■ The Keens argue that Ruddy's litigation of the *Craine v. Keen* case when the estate had no administrator constituted abuse of process. Specifically, the Keens argue that Ruddy maliciously and knowingly acted without a client, and that such action constitutes abuse of process. The trial court rejected this argument, finding that "there is no genuine issue of material fact that Mr. Ruddy used the process for anything other than to collect a debt for his client." The court also found that no evidence existed which showed that Ruddy wanted to shut down Alaska Trams.

This court has recently examined the tort of abuse of process. In *Kollodge v. State*, 757 P.2d 1024 (Alaska 1988), we defined the tort as comprised of two elements: "first, an ulterior purpose, and second a willful act in the use of the process not proper in the regular conduct of the proceeding." *Id.* at 1026, *quoting Jenkins v. Daniels*, 751 P.2d 19, 22 (Alaska 1988). The second element requires some overt act in addition to initiating the suit. Thus, "the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." *Id., quoting Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1169, 232 Cal.Rptr. 567, 574, 728 P.2d 1202, 1209 (1986). The Restatement (Second) of Torts, § 682, comment a (1976), also asserts this view. It states:

> The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.

*See also* W. Keeton, D. Dobbs, R. Keeton and D. Owen, *Prosser and Keeton on the Law of Torts*, § 121, at 897–898 (5th ed. 1984).

In the instant case, the trial court found that Ruddy had no ulterior purpose. More important, the court found that Ruddy had used the process for exactly the purpose it was designed to accomplish; namely, the collection of a debt for the Denney estate.

Given these conclusions, the court held as a matter of law that Ruddy had not committed the tort of abuse of process. We agree.

The "act" which the Keens allege constituted an abuse of process in the instant case was Ruddy's continued litigation of *Craine v. Keen* after he learned of Craine's resignation. However, Ruddy apparently learned of Craine's resignation only one week before the long-delayed show cause hearing. Even assuming that it was improper[1] for Ruddy to proceed with the suit under these circumstances, his actions do not rise to the level of abuse of process. Improper as the suit may have been in a procedural sense, Ruddy sought nothing more than to collect on the judgment at issue. He did not misuse the process to obtain anything more. *Craine* "was not exploited to obtain collateral advantage or used in any form of extortion." *Kollodge,* 757 at 1027, *quoting Blue Goose Growers, Inc. v. Yuma Groves, Inc.,* 641 F.2d 695, 697 (9th Cir.1981).

Further, the Keens failed to make a showing of malice sufficient to support a finding of abuse of process. The Keens' vague allegations of malice are insufficient, absent some showing of specific facts, to preclude summary judgment. Alaska R.Civ.P. 56(e); *O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau,* 636 P.2d 1170, 1173 (Alaska 1981). They argue, however, that the trial court should have inferred malice from Ruddy's conduct in the *Craine v. Keen* litigation. Such an inference is unreasonable based on the above facts. Thus, the Keens have failed to show malice or an ulterior purpose suffi-cient to bring Ruddy within the tort of abuse of process.

B. *Declaratory Judgment*

■ The trial court rejected the Keens' request for declaratory judgment as to Karen Keen's ownership of Alaska Trams. The court reasoned that because Ruddy did not personally claim any interest in Alaska Trams, there was no actual controversy between Ruddy and the Keens.

Declaratory judgment is inappropriate when there is no actual controversy between the parties. AS 22.10.020(g). In *Jefferson v. Asplund,* 458 P.2d 995 (Alaska 1969), we adopted the analysis of Chief Justice Hughes in *Aetna Life Insurance Co. v. Haworth*[2] as to this issue:

A "controversy" in this sense must be one that is appropriate for judicial determination.... A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of *parties having adverse legal interests.*

*Jefferson,* 458 P.2d at 998–999 (emphasis added). While this concept has been interpreted broadly in Alaska, the "basic idea" remains that the conduct of one party adversely affects the interest of another. *Bowers Office Products v. University of Alaska,* 755 P.2d 1095, 1097 (Alaska 1988). In the instant case the Keens seek a determination that, as against Ruddy, Karen Keen owns 95% of Alaska Trams. Ruddy, however, claims no interest or expectancy in the corporation, and indeed has disclaimed any such interest. The Keens did

---

1. This court has interpreted Civil Rule 17(a) to provide that:

   [N]o action may be dismissed on the ground that it is not being prosecuted in the name of the real party in interest unless (1) an objection to that effect has been made; (2) a reasonable time for joinder of or ratification by the real party in interest has been allowed; and (3) that time has passed without joinder or ratification having been accomplished.

   *KOS v. Williams,* 616 P.2d 868, 870 (Alaska 1980) (footnotes omitted). Similarly, it is a well-established rule that successor administra-tors may continue to prosecute actions commenced by their predecessors. 31 Am.Jur.2d *Executors and Administrators* § 620, at 267 (1967). Given these rules, and the fact that the Ohio court specifically left the estate open so that litigation could proceed on behalf of the estate's creditors, it was probably reasonable for Ruddy to continue to prosecute the case in the absence of objections from the Keens or the estate's creditors.

2. 300 U.S. 227, 240–241, 57 S.Ct. 461, 463–464, 81 L.Ed. 617, 621–622 (1937).

not move to add the estate's new administrator, although they had the opportunity to do so.

While seeking declaratory judgment would be appropriate as against the Denney estate's administrator, it surely would be unnecessary if the court in *Craine v. Keen* were adjudicating Karen Keen's rights in Alaska Trams. *See, e.g., Keltner v. Curtis*, 695 P.2d 1076, 1079 n. 4 (Alaska 1985) (trial court has inherent power to determine wife's interest in property seized to pay husband's debt so long as wife is made a party to the litigation). Apparently, the Keens used this declaratory judgment action for "procedural fencing;" a purpose we condemned in *Jefferson*, 458 P.2d at 998. The trial court did not err in denying the Keens' request for declaratory judgment.

### C. *Trial Court's Award of Costs and Attorney's Fees*

■ After entering summary judgment against the Keens, the trial court ordered them to pay Ruddy's full attorney's fees.[3] The court explained its order as follows:

> The full attorney's fee requires that the filing of the complaint by plaintiffs in this matter is "manifestly unreasonable," be in "bad faith," or "vexatious." This lawsuit is an extension of the Juneau case and should have been resolved in that context. The authorities cited by plaintiffs fail to establish a credible basis for argument in support of plaintiffs' claims. This court finds, under the authorities cited by the defendants, the action was brought in "bad faith."

The Keens argue that their suit was in good faith and was warranted by existing law.

This court will set aside the trial court's award of attorney's fees only if it is "manifestly unreasonable and amounts to a clear abuse of discretion." *Alaska Northern Dev., Inc. v. Alyeska Pipeline Serv. Co.*, 666 P.2d 33, 42 (Alaska 1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984). *See also Dahle v. Atlantic Richfield Co.*, 725 P.2d 1069, 1075 (Alaska 1986). The trial court may award full attorney's fees if it finds that the losing party acted in bad faith in asserting a claim or a defense. *Alaska Northern Dev.*, 666 P.2d at 42, n. 9; *Davis v. Hallett*, 587 P.2d 1170, 1171–1172 (Alaska 1978); *Malvo v. J.C. Penney Co., Inc.*, 512 P.2d 575, 588 (Alaska 1973). The trial court's award in the instant case was not a clear abuse of discretion.

The trial court could reasonably infer bad faith on the Keens' part from their litigation tactics and from the substance of their suit. The nature of the allegations in the Keens' complaint support a conclusion that the purpose of the Keens' suit was merely to harass and delay Ruddy in his litigation of the *Craine v. Keen* suit. Their abuse of process claim was not supported by law or fact. In short, the trial court's award, based on these factors, was not a clear abuse of discretion.

### D. *Trial Court's Award of Sanctions*

In addition to its award of full attorney's fees, the trial court imposed a Civil Rule 11 sanction[4] of $100.00 on the Keens' attor-

---

3. The Keens originally filed this action in Anchorage, and refused to stipulate to move the case to Juneau. Judge Katz, sitting in Anchorage, granted Ruddy's motion to transfer the case to Juneau, finding that the Keens' filing in Anchorage constituted forum shopping and bad faith. The judge also ordered the Keens to pay Ruddy's actual costs and fees in bringing his motion. Because the trial court's award at issue here includes the amount awarded by Judge Katz, we need not separately consider the validity of Judge Katz' award.

4. Alaska Civil Rule 11 provides:
   Every pleading, motion and other paper of a party represented by an attorney shall be

signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief

ney, A. Lee Petersen. The sanction appears to be based on the same factors as the court's award of attorney's fees. The Keens argue that their complaint was fully warranted by existing law, and therefore that the court erred in ordering sanctions. Ruddy, on the other hand, argues that the sanction was clearly inadequate and "eviscerates" Rule 11. In his cross-appeal he seeks an order imposing joint and several liability on Petersen for the attorney's fee award imposed by the trial court on the Keens.

a. Whether the sanction was required

■ Civil Rule 11 requires a court to impose sanctions on an attorney when it finds that a pleading signed by him is not well grounded in fact, is not warranted by existing law or a reasonable argument for its extension, or is interposed for an improper purpose. The Rule creates an objective standard of "reasonableness under the circumstances," and is intended to be more stringent than a mere "good faith" formula. *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986) (citations omitted) (interpreting identical Federal Rule of Civil Procedure 11).[5]

On review of a lower court's decision as to sanctions, appellate courts differ as to the appropriate standard of review. The Ninth Circuit considers *de novo* the question of whether specified conduct violates the Rule, but reviews the trial court's choice of the appropriate sanction under an abuse of discretion standard. *Golden Ea-*

*gle*, 801 F.2d at 1538. The Eleventh Circuit treats questions of whether specific conduct violates the Rule under an abuse of discretion standard, but considers *de novo* whether a pleading or motion is legally sufficient. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987). Finally, the Seventh Circuit reviews all factors relevant to the issue of whether the attorney's inquiry into facts and law was reasonable under an abuse of discretion standard. *R.K. Harp Inc. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir.1987). This latter view is based on the trial court's intimate familiarity with the proceedings below. *Id.* In our opinion, it is the best of the above standards, because it streamlines the process of review and comports with our approach to the similar subject of attorney's fees, discussed above.

Applying this standard, the trial court did not err in ordering sanctions against Petersen. As discussed above, the court reasonably concluded that the Keens (and Petersen) acted in bad faith in bringing their suit. Although Rule 11 applies an objective standard, that standard is more, rather than less, strict than a "good faith" standard. Therefore, where a court has found that the suit was in bad faith, by definition Rule 11 has been violated. Moreover, also as discussed above, the Keens' legal theories were frivolous. Therefore, Petersen could not have signed the pleadings with a reasonable belief that the pleadings were supported by existing law or a good faith argument for its extension.

formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to

the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleadings, motions, or other paper, including a reasonable attorney's fee.

5. *See also Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (quoting advisory committee note to Federal Rule 11); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829 (9th Cir.1986); W. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 191 (1985). Some courts, however, have continued to analyze Rule 11 violations under a bad faith standard. *See, e.g., Nelson v. Piedmont Aviation, Inc.,* 750 F.2d 1234, 1238 (4th Cir.1984), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2358, 86 L.Ed.2d 259 (1985).

### b. Whether the trial court's sanction is too low

Ruddy argues that the trial court's sanction was too low, particularly considering the difficulty he expects to encounter in enforcing the trial court's judgment against the Keens. Civil Rule 11 provides, in pertinent part:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an *appropriate sanction*, which *may* include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleadings, motion, or other paper, including a reasonable attorney's fee.

(Emphasis added). This permissive language vests discretion in the trial court to determine what sanctions are appropriate in a given case. Thus, the Advisory Committee explained that the court "has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted." Committee Note to Rule 11, *reprinted* in J. Moore and J. Lucas, *Moore's Federal Practice*, Vol. 2A, ¶ 11.01[4], at 11–6 (1986). This approach is consistent with that taken by courts as to review generally of Rule 11 sanctions. *See, e.g., Cheek v. Doe,* 828 F.2d 395, 397 (7th Cir.1987), *cert. denied,* 484 U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374 (1987); *Golden Eagle Distrib. Corp. v. Burroughs Corp., supra,* 801 F.2d at 1538. The appropriate standard of review of the trial court's choice of sanction therefore is whether the court abused its discretion.

Applying this standard, no clear abuse of discretion appears. Although $100.00 is a small sum compared to the attorney's fees imposed against the Keens, it nevertheless carries with it a stigma and a message of disapproval. The trial court could reasonably have considered this penalty sufficient to punish Petersen for his conduct.

### E. *Sanctions Against Ruddy's Counsel*

The Keens argue that the trial court improperly denied the Keens' motion for Rule 11 sanctions against Ruddy's attorney for making "false statements and misrepresentations in signed documents to the court." This argument is frivolous.

The opinion of the trial court is AFFIRMED.