Daniel DENARDO, Appellant,

v.

Peter MICHALSKI, Marc June, John
Does, Appellees.

No. S–3871.

Supreme Court of Alaska.

May 24, 1991.

Daniel DeNardo, pro se.

William G. Mellow, Asst. Atty. Gen., Juneau, Douglas B. Baily, Atty. Gen., Juneau, for appellees.

Before RABINOWITZ, C.J., and
BURKE, MATTHEWS, COMPTON and
MOORE, JJ.

## OPINION

PER CURIAM.

The court is asked to determine whether the superior court correctly concluded that Judge Michalski was protected from liability for damages based on the doctrine of judicial immunity and whether summary judgment was properly entered in favor of the state's attorney regarding Daniel DeNardo's claim of abuse of process. In a prior proceeding, judgment was entered against Daniel DeNardo, and he was ordered to pay attorney's fees to the state. When DeNardo failed to pay, he was summoned to court by attorney Marc June on behalf of the state for a judgment debtor's examination.[1] Judge Peter Michalski presided over the hearing. DeNardo moved to have Michalski recused based on AS 22.20.-020(a)(5) because Michalski had been chief of the state's Office of Special Prosecutions

---

1. June is a private attorney but he was retained to defend the state and state officers in actions brought by DeNardo.

and Appeals and, according to DeNardo, had litigated appeals against DeNardo within two years prior to the judgment debtor hearing.[2] His motion was denied.

In response to questioning concerning his financial status at the hearing on the merits, DeNardo asserted his Fifth Amendment privilege and claims to have pled inability to perform. When he was warned that continued refusal to answer would subject him to civil contempt, DeNardo requested a jury trial, which he did not receive. After being found in civil contempt on June 10, 1986, he was incarcerated. On September 15, 1986, DeNardo was given another opportunity to respond to questions regarding his finances. He again requested a jury trial and refused to answer, and was returned to the Sixth Avenue Annex. Judge Michalski ordered his release on December 10, 1986.

DeNardo filed this lawsuit seeking $5,000,000 in damages from Michalski and June alleging violations of his constitutional rights. In response to Michalski's and June's motion, Judge Souter dismissed the claims against Michalski, but ruled that DeNardo had alleged a cause of action for abuse of process against June. The state moved for summary judgment as to the claims against June, which was granted. DeNardo appeals.

The United States Supreme Court has held that judges are not liable for damages for their "judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. (13 Wall) 335, 351, 20 L.Ed. 646 (1871). In *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978), the Court ruled that a judge who *ex parte* ordered the sterilization of a minor was nonetheless immune because, even though he acted in excess of his jurisdiction, he did not act in the "clear absence of all jurisdiction."

Judge Michalski is only liable if his actions were 1) not "judicial," or 2) outside of his subject matter jurisdiction. Michalski's actions were clearly judicial. *Cf. Stump v. Sparkman*, 435 U.S. at 362, 98 S.Ct. at 1107–08; *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir.1972). DeNardo, however, claims that AS 22.20.020 stripped Michalski of jurisdiction, and consequently of immunity.

The application of AS 22.20.020 to an assistant district attorney who was subsequently appointed to the bench was evaluated in *Keel v. State*, 552 P.2d 155 (Alaska 1976). We held that the judge would only be disqualified from cases in which "he actually participated ... by counseling or otherwise." *Id.* at 157 n. 5. DeNardo does not indicate how Michalski was directly involved in any of his civil cases from his position as head of a criminal division. AS 22.20.020(a)(5), as construed by *Keel*, only requires the judge to recuse her or himself if she or he participated in some aspect of the case at bar.

■ Furthermore, even if AS 22.20.020 required Michalski to recuse himself, it did not strip his court of all subject matter jurisdiction. Michalski's judicial immunity therefore remained intact. The Court in *Stump* and *Bradley* only focused on the court's jurisdiction, and, other than determining that the individual judge's actions were "judicial," did not focus on the propriety of specific actions of the judge. *See Bradley*, 80 U.S. (13 Wall) at 351–52. Since Michalski had jurisdiction to decide whether to recuse himself, his exercise of that jurisdiction in deciding not to do so, even if improper, did not divest him of immunity.[3]

---

**2.** At the time DeNardo attempted to disqualify Judge Michalski, AS 22.20.020(a)(5) stated: "A judicial officer may not act as such in a court of which he is a member in an action in which ... either party has retained him as their attorney or has been professionally counseled by him in any matter within two years preceding the filing of the action." *See Keel v. State*, 552 P.2d 155, 156 (Alaska 1976).

**3.** In regard to the history of judicial immunity, the Supreme Court of the United States has observed the following:

> Earlier, in *Floyd and Barker*, 12 Co.Rep. 23, 77 Eng.Rep. 1305 (1607), Coke and his colleagues of the Star Chamber had declared the judges of the King's Bench immune from prosecution in competing courts for their judicial acts. In doing so, they announced the theory

DeNardo also claims that Michalski lost his immunity by proceeding in disregard of DeNardo's constitutional right to a jury trial. This argument has the same flaws as the argument immediately above. Even if denying DeNardo a jury trial violated his constitutional rights, it did not strip Michalski of subject matter jurisdiction and so his immunity is unaffected. *See Stump v. Sparkman*, 435 U.S. at 359, 98 S.Ct. at 1106 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.").

We now turn to DeNardo's claim that June violated his constitutional rights by engaging in conduct which resulted in DeNardo's civil contempt imprisonment. We have found that abuse of process consists of two essential elements, "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1988) (quoting *Jenkins v. Daniels*, 751 P.2d 19, 22 (Alaska 1988)). The second element "contemplates some overt act done in addition to the initiating of the suit.... '[T]he mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action.'" 757 P.2d at 1026 (quoting *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 232 Cal.Rptr. 567, 728 P.2d 1202, 1209 (1986)); *see also Keen v. Ruddy*, 784 P.2d 653, 655 (Alaska 1989) (No recovery for abuse of process because the attorney "had no ulterior purpose. More important [the attorney] used the process for exactly the purpose it was designed to accomplish; namely the collection of a debt...."); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *The Law of Torts* § 121, at 898 (5th ed. 1984).

The claim asserted against June is similar to that raised in *Keen*. June contends that he initiated the judgment debtor examination to collect an unpaid judgment and he did not intend to entice DeNardo into committing civil contempt. Not only is the requisite "ulterior motive" missing, but DeNardo has not shown that any acts undertaken by June were not steps required to take the process to its authorized conclusion.

To survive a motion for summary judgment an opponent must "set forth specific facts showing that there is a genuine issue for trial." Civil Rule 56(e). Since DeNardo did not do so, summary judgment was properly entered against him.

The judgment below is AFFIRMED.

upon which the concept of judicial immunity was built. The judge involved in *Floyd and Barker* was a common-law Judge of Assize who had presided over a murder trial. He was then charged in the Star Chamber with conspiracy. The court concluded that the judges of the common law should not be called to account "before any other Judge at the suit of the King." *Id.*, at 24, 77 Eng.Rep. at 1307.

[A]nd it was agreed that insomuch as the Judges of the realm have the administration of justice, under the King, to all his subjects, they ought not to be drawn into question for any supposed corruption, which extends to the annihilating of a record, or of any judicial proceedings before them, or tending to the slander of the justice of the King, which will trench to the scandal of the King himself, except it be before the King himself; for they are only to make an account to God and the King, and not to answer to any suggestion in the Star–Chamber. *Id.*, at 25, 77 Eng.Rep. at 1307.

....

By 1868, one of the judges of the Court of Exchequer explained judicial immunity in language close to our contemporary understanding of the doctrine:

It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences. *Scott v. Stansfield*, 3 L.R.Ex., at 223, quoted in *Bradley v. Fisher*, [80 U.S.] 13 Wall. 335, 350, n. (1872). *Pulliam v. Allen*, 466 U.S. 522, 530–32, 104 S.Ct. 1970, 1975–76, 80 L.Ed.2d 565 (1984).