Judy MEIDINGER, Appellant
and Cross–Appellee,

v.

KONIAG, INC., Appellee and
Cross–Appellant.

Nos. S–9431, S–9402.

Supreme Court of Alaska.

July 27, 2001.

Rehearing Denied Sept. 25, 2001.

Don C. Bauermeister, Burke & Bauermeister, P.L.L.C., Anchorage, for Appellant/Cross–Appellee.

Timothy W. Seaver and R. Collin Middleton, Middleton & Timme, P.C., Anchorage, for Appellee/Cross–Appellant.

Before FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

In this appeal we consider claims arising out of the solicitation of proxies by shareholders of an Alaska Native regional corporation. Because we conclude that certain proxy solicitation statements by the shareholders were materially false as a matter of law, we affirm the superior court's grant of summary judgment as to those statements. But because the corporation voluntarily dismissed its remaining claims for materially false or misleading proxy solicitation statements, we do not reach the merits of the corporation's cross-appeal challenging the superior court's denial of summary judgment as to those claims.

## II. *FACTS AND PROCEEDINGS*

Koniag, Inc. is an Alaska corporation, incorporated under the Alaska Native Claims Settlement Act [1] (ANCSA) as a regional corporation. In December 1997 Koniag held its annual shareholders meeting in Kodiak (1) to elect three directors to the board of directors for three-year terms; and (2) to vote on Proposition 1, which provided for the establishment of a permanent fund as a settlement trust under the provisions of ANCSA.

Koniag shareholders Diane Cooper, Jana Larsen–Horne, and Judy Meidinger sought election to Koniag's board and solicited proxies in October and November 1997. These three candidates (the Meidinger slate) opposed the adoption of Proposition 1, and their proxy solicitation statements urged voters to reject the trust proposal.

In December 1997 Koniag sued the Meidinger slate for proxy solicitation violations and defamation. Koniag's complaint alleged that the Meidinger slate made numerous materially false or misleading proxy solicitation statements. The Meidinger slate counterclaimed for breach of fiduciary duty, intended consequences, intentional infliction of emotional distress, and abuse of process.

In May 1999 Koniag moved for summary judgment on each of its claims for materially false or misleading proxy solicitation statements by the Meidinger slate. The Meidinger slate opposed Koniag's motion and cross-moved for summary judgment on Koniag's claims. On August 23 the superior court granted Koniag summary judgment on two of its claims for materially false or misleading proxy solicitation statements. But the superior court ruled that genuine factual issues precluded the grant of summary judgment on Koniag's remaining claims for proxy solicitation violations.[2] The superior court also ruled on the Meidinger slate's cross-motion for summary judgment, concluding as a matter of law that Larsen–Horne had not misrepresented her status as an associate with the Jamin law firm, but denying the motion as to all other issues.

After the superior court expressed its willingness to grant Koniag injunctive relief based upon the statements the court found to be materially false as a matter of law, Koniag filed a notice of intent not to seek further trial of claims; this notice dismissed Koniag's remaining claims, but purported to reserve Koniag's right to argue on cross-appeal that the superior court erred to the extent it failed to grant Koniag summary judgment on its claims of false or misleading proxy.

On September 29 the superior court entered an injunction (1) directing the Meidinger slate to cease and desist from further violations of the law; (2) directing the Meidinger slate, for a period of three years, to file

---

1. *See* 43 U.S.C. §§ 1601–29g (1986 & Supp. 2000).

2. The superior court granted partial summary judgment on Koniag's claim regarding the Meidinger slate's statements that "incompetence is not a just cause for removing a trustee." The court ruled that the statement was untrue as a matter of law, but concluded that materiality presented an issue of fact.

proxy statements and other proxy solicitation materials with the State Division of Banking, Securities, and Corporations for examination and review at least ten working days before a distribution to shareholders; and (3) voiding the proxies obtained by the Meidinger slate.

In July 1999 Koniag moved for summary judgment on the Meidinger slate's counterclaims. The Meidinger slate opposed Koniag's motion. On September 27 the superior court dismissed the Meidinger slate's remaining counterclaims for abuse of process, intentional infliction of emotional distress, and breach of fiduciary duty on summary judgment.[3]

The superior court entered final judgment for Koniag on December 17, 1999. Judy Meidinger appeals.[4] Koniag cross-appeals.

## III. DISCUSSION

### A. Standard of Review

▇ We review an award of summary judgment de novo and affirm " 'if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' "[5] We draw all reasonable inferences of fact in favor of the nonmoving party.[6] We apply our independent judgment to any questions of law and adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[7]

### B. It Was Not Error to Grant Koniag Summary Judgment on Two of Its Claims for Materially False or Misleading Proxy Solicitation Statements by the Meidinger Slate.

The proxy solicitation statements the Meidinger slate distributed in October 1997 opposed the adoption of Proposition 1, which provided for the establishment of a perma-

nent fund as a settlement trust under the provisions of ANCSA. A statement circulated by the Meidinger slate in opposition to the trust asserted: "This proposal gives [Koniag's] Board way more power than they currently possess. They would be able to appoint themselves as trustees, (more directors fees and compensation), change the terms of the trust and the number of trustees as they see fit." Another Meidinger slate proxy solicitation statement asserted: "THE PROPOSAL ALSO GRANTS IRREVOCABLE DELEGATION FROM THE SHAREHOLDERS TO THE CURRENT BOARD TO APPOINT AND REMOVE TRUSTEES."

Koniag argued in its summary judgment motion that these statements were materially false or misleading as a matter of law. The superior court agreed and granted Koniag summary judgment as to these statements. Meidinger appeals this ruling.

The Alaska Securities Act prohibits misrepresentations of material fact in proxy solicitations.[8] Alaska Statute 45.55.160 provides:

A person may not, in a document filed with the Administrator or in a proceeding under this chapter, make or cause to be made an untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading.

Alaska's regulations further provide:

A solicitation may not be made by means of a proxy statement . . . that contains a material misrepresentation. A misrepresentation is a statement that, at the time and under the circumstances in which it is made (1) is false or misleading with respect to a material fact; (2) omits a material fact necessary in order to make a state-

---

3. The superior court had dismissed the Meidinger slate's counterclaim for intended consequences on May 4, 1998.

4. Meidinger's brief asserts that Diane Cooper and Jana Larsen Horne have settled with Koniag.

5. Mathis v. Sauser, 942 P.2d 1117, 1120 (Alaska 1997) (quoting Dayhoff v. Temsco Helicopters, Inc., 772 P.2d 1085, 1086 (Alaska 1989)).

6. See Ardinger v. Hummell, 982 P.2d 727, 730 (Alaska 1999).

7. See Mathis, 942 P.2d at 1120 (citing Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

8. See AS 45.55.160.

ment made in the solicitation not false or misleading; or (3) omits a material fact necessary to correct a statement, in an earlier communication regarding the solicitation of a proxy for the same meeting or subject matter, which has become false or misleading.[9]

█ A misrepresentation is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. Subjective proof that one or more shareholders actually granted a proxy because of a falsehood is not required; only the objective standard encompassed in the definition of materiality need be met.[10]

Materiality is a mixed question of law and fact, "involving as it does the application of a legal standard to a particular set of facts." [11] In considering whether summary judgment on the issue of materiality is appropriate, we must bear in mind that the determination of materiality involves assessments that are peculiarly ones for the trier of fact:

the underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality. The determination requires delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.[12]

Nevertheless, the issue of materiality may be resolved as a matter of law on summary judgment "if the established [misrepresentations] are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality'...." [13]

9. 3 Alaska Administrative Code (AAC) 08.315(a).

10. *Brown v. Ward*, 593 P.2d 247, 250 (Alaska 1979) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)); *see also* 3 AAC 08.315(a).

11. *TSC Indus., Inc.*, 426 U.S. at 450, 96 S.Ct. 2126.

12. *Id.*

13. *Id.* (citations omitted).

14. Section 18.3 of the trust proposal provides:

█ Meidinger first argues on appeal that the statement that the trust proposal gave Koniag's board the "authority to change the terms of the trust and the number of trustees as they see fit" is not false or misleading under the provisions of the trust proposal. Meidinger cites section 8.5 of the trust agreement, which provides in relevant part: "At any time within ten (10) years of the funding of the trust, the Trustees may reduce the number of Trustees to not fewer than five (5) Trustees." Meidinger also cites section 18.1(a) of the trust agreement, which provides in part: "At any time during the first three years of the Trust, the Trustees, without the consent of the Beneficiaries, but with the agreement of Koniag, Inc. (acting with approval of its Board of Directors and through its duly elected officers), may amend any technical aspect of the Trust...."

But Meidinger's argument that the trust agreement grants Koniag's board the authority to change the terms of the trust and the number of trustees "as they see fit" is contradicted by other sections of the trust agreement and is therefore not persuasive. Section 8.5 of the trust agreement provides that the number of trustees may be reduced only within ten years of the funding of the trust, and the number of trustees may not be reduced to fewer than five. Furthermore, section 18.1 provides trustees with discretion to make only "limited amendments" to the trust agreement, and section 18.3 further limits trustees' power to amend the trust agreement.[14] We therefore conclude, as did the superior court, that the authority-to-change statement is untrue as a matter of law.

*Limitations.* Notwithstanding any provision of this Trust Agreement, the Trustees may not use the powers contained in this Article 18 to change the designated Beneficiaries of the Trust or their respective shares of the Trust, to revoke the Trust, to authorize the distribution of principle except in the event of the termination of the Trust, to reduce the percentages required for the approval of matters submitted to the holders of the Units, to cause any asset of the Trust to revert in any manner to Koniag, Inc., or to reduce the length of time between votes as described in Article 16.

█ Meidinger next argues that the statement that the trust proposal "grants irrevocable delegation from the shareholders to the current board to appoint or remove trustees" is not false or misleading under the provisions of the trust agreement. Meidinger cites section 8.6 of the trust agreement, which provides in part: "By approving this Trust Agreement, the Board of Directors and shareholders do consent to and ratify the irrevocable delegation by Koniag, Inc. of its authority to appoint and remove the Trustees, to the extent provided by this Trust Agreement." [15] But section 8.6 addresses the delegation of *Koniag's* authority to appoint and remove trustees, and does not purport to delegate the authority of its shareholders. 43 U.S.C. § 1629e(b)(2) grants Native corporations exclusive authority to appoint and remove trustees of a settlement trust; shareholders of a Native corporation do not have any authority to appoint or remove the trustees of a settlement trust. We therefore affirm the superior court's conclusion that the irrevocable delegation statement is untrue as a matter of law.

█ Finally, Meidinger argues that summary judgment on the issue of materiality was inappropriate. She contends that because Koniag mailed its shareholders a copy of the proposed trust agreement, the question whether the statements regarding the trust agreement altered the "total mix" of information available to Koniag's shareholders is one for the trier of fact. Meidinger cites *TSC Industries, Inc. v. Northway, Inc.*, where the U.S. Supreme Court held that an omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." [16]

We assume for purposes of discussion here that the "total mix" standard applies to cases involving affirmative misrepresentations (as distinguished from omissions of material facts) in proxy solicitation statements. We nonetheless find Meidinger's argument unpersuasive. As the United States Supreme Court noted in *Virginia Bankshares, Inc. v. Sandberg:*

> [N]ot every mixture with the true will neutralize the deceptive. If it would take a financial analyst to spot the tension between the one and the other, whatever is misleading will remain materially so, and liability should follow. The point of a proxy statement, after all, should be to inform, not to challenge the reader's critical wits.[17]

Similarly, Koniag's shareholders cannot be expected to interpret and understand the terms of a trust proposal that even Meidinger's brief describes as "complex." Indeed, a proxy solicitation statement that Meidinger distributed in opposing the trust stated: "You must vote no on Proposition 1.... If you are thinking about voting yes, *first get a lawyer, an accountant* so you understand enough to make an informed choice...." (Emphasis added.)

The Meidinger slate's misrepresentations pertained to the merits of the only proposition scheduled to be considered at Koniag's 1997 annual meeting. Indeed, Meidinger's appellate brief describes the trust proposal as "important." We conclude that the misrepresentations were so obviously important to an investor, that reasonable minds cannot differ on the question of materiality. We therefore affirm the superior court's grant of summary judgment on the issue of materiality.

C. *Meidinger Has Not Established that Alaska's Proxy Solicitation Regulations Violate the Right to Free Speech Under Article I, Section 5 of the Alaska Constitution.*

█ Meidinger next argues that Alaska's proxy solicitation regulations are vague and

---

**15.** The clause "to the extent provided by this Trust Agreement" refers to section 8.4, which grants the Board of Trustees authority to fill any vacancies caused by death, incapacity, resignation, or removal of a trustee, and section 14.2, which provides that if Koniag, Inc. ceases to exist as a discrete legal entity, the corporation's authority to appoint and remove trustees shall be given to holders of Class A Trust Units.

**16.** 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

**17.** 501 U.S. 1083, 1097, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) (citations omitted).

overbroad, and hence violate the right to free speech under article I, section 5 of the Alaska Constitution. But Meidinger's argument is unsupported by any case law involving proxy solicitations. We therefore reject Meidinger's constitutional argument.[18]

### D. It Was Not Error to Grant Koniag Injunctive Relief Without Conducting an Evidentiary Hearing.

■ In September 1999 the superior court entered an injunction (1) directing the Meidinger slate to cease and desist from further violations of the law; (2) directing the Meidinger slate, for a period of three years, to file proxy statements and other proxy solicitation materials with the State Division of Banking, Securities, and Corporations (division) for examination and review at least ten working days before a distribution to shareholders; and (3) voiding the proxies obtained by the Meidinger slate. Meidinger contends that it was error for the superior court to grant Koniag injunctive relief without first conducting an evidentiary hearing. Meidinger cites AS 45.55.920(d), which provides that "[b]efore issuing an order under ... this section [for injunctive relief or a civil penalty], the administrator shall give reasonable notice of and an opportunity for a hearing." We are unpersuaded.

■ Alaska Statute 45.55.920(d) applies by its terms only to administrative proceedings in the Department of Commerce and Economic Development.[19] It does not apply to judicial proceedings. We have held that an evidentiary hearing is not required in a judicial proceeding in the absence of a genuine issue of material fact.[20] Because we conclude that no genuine fact dispute precluded the grant of summary judgment on two of Koniag's claims for materially false or misleading proxy solicitation statements by the Meidinger slate,[21] we hold that it was not error to grant Koniag injunctive relief based on those statements without conducting an evidentiary hearing.

### E. It Was Not an Abuse of Discretion to Grant Injunctive Relief.

■ Meidinger next argues that it was an abuse of discretion for the superior court to require the Meidinger slate, for a period of three years, to file proxy statements and other proxy solicitation materials with the division for examination and review before distributing them to shareholders. Meidinger notes that under AS 45.55.920(a)(1)(B), three years is the maximum period that an individual can be required to file proxy statements and other proxy solicitation materials with the division. Meidinger contends that the proxy solicitation violations upon which the superior court based the injunction do not warrant the maximum penalty allowed by AS 45.55.920(a)(1)(B).

■ We review a grant of injunctive relief for abuse of discretion.[22] Here, the injunction the superior court entered borrowed heavily from the remedies listed in AS 45.55.920(a)(1).[23] As we recognized above,

---

18. Cf. Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) ("Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as ... corporate proxy statements.... [T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity.").

19. AS 45.55.905, .920.

20. See Acevedo v. Burley, 944 P.2d 473, 476 n. 2 (Alaska 1997).

21. See supra Part III.B.

22. See North Kenai Peninsula Rd. Maintenance Serv. Area v. Kenai Peninsula Borough, 850 P.2d 636, 639 (Alaska 1993); Blair v. Washington

State Univ., 108 Wash.2d 558, 740 P.2d 1379, 1382 (1987).

23. AS 45.55.920(a) provides:

If it appears to the administrator that a person has engaged or is about to engage in an act or practice in violation of a provision of this chapter or regulation or order under this chapter, the administrator may
(1) in the public interest or for the protection of investors, issue an order
(A) directing the person to cease and desist from continuing the act or practice;
(B) directing the person, for a period not to exceed three years, to file the annual reports, proxies, consents or authorizations, proxy statements, or other materials relating to proxy solicitations ... with the administrator for examination and review 10 working days before a distribution to shareholders; and

that statute applies by its terms to administrative and not judicial proceedings.[24] But it nevertheless illustrates the types of remedies that the legislature believed to be reasonable upon a violation of Alaska's proxy solicitation laws. Furthermore, the Meidinger slate distributed the proxy solicitation statements that the superior court found to be materially false and misleading only one year after the division had warned Meidinger "to take more care in future election contests to provide complete disclosure pursuant to the regulations." The injunctive relief granted by the superior court was therefore not an abuse of discretion.

### F. *It Was Not Error to Dismiss the Meidinger Slate's Counterclaims on Summary Judgment.*

#### 1. *Abuse of process*

The Meidinger slate counterclaimed for abuse of process, alleging that "Koniag's lawsuit was ... filed to obtain an unfair advantage in pending and future [shareholders'] elections and to intimidate the Meidinger slate from further participation in shareholder elections or from running for office in the future." The superior court dismissed the abuse of process counterclaim on summary judgment. Meidinger appeals.

The tort of abuse of process consists of two elements: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.[25] The second element "contemplates some overt act done in addition to the initiating of the suit. The mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action."[26] "Some definite act or threat not authorized by the process,

or aimed at an objective not legitimate in the use of the process, is required...."[27]

The superior court found that there was a genuine factual dispute regarding Koniag's ulterior purpose.[28] But the superior court dismissed the abuse-of-process counterclaim on summary judgment because it concluded as a matter of law that the Meidinger slate's allegations did not satisfy the second element of the tort.

Meidinger argues that a genuine factual dispute regarding the second element of abuse of process—an overt act in addition to the act of initiating a lawsuit—precludes dismissal of the counterclaim on summary judgment. Meidinger contends that Koniag performed the necessary overt act when it (1) sought compensatory and punitive damages from the Meidinger slate; (2) requested injunctive relief denying Jana Larsen–Horne her seat on the board; (3) requested injunctive relief directing a counting of misled shareholders' votes in favor of Koniag; (4) threatened the Meidinger slate with a large attorney's fee award; (5) publicized the lawsuit to gain advantage in future shareholder elections; and (6) sent a flyer to its shareholders prior to the election alleging violations of Alaska securities law by the Meidinger slate.

Meidinger's first four allegations of overt acts are examples of actions taken in the regular course of litigation and therefore cannot be a proper basis for an abuse of process claim.[29] Furthermore, the publicity Koniag accorded the lawsuit was a permissible exercise, if not an obligation, of a corporation about to spend money on litigation expense. We therefore affirm the superior court's dismissal of the abuse of process counterclaim on summary judgment.

---

(C) voiding the proxies obtained by a person ... including their future exercise or actions resulting from their past exercise, if the proxies were solicited by means of an untrue or misleading statement....

**24.** *See supra* Part III.D.

**25.** *See DeNardo v. Michalski*, 811 P.2d 315, 317 (Alaska 1991) (citing *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1988)).

**26.** *Id.* at 317 (citations and internal ellipses omitted).

**27.** *Kollodge*, 757 P.2d at 1026.

**28.** Koniag does not dispute on appeal the existence of a genuine factual dispute regarding its ulterior purpose.

**29.** *See DeNardo*, 811 P.2d at 317.

### 2. Intentional infliction of emotional distress

 The Meidinger slate also counterclaimed for intentional infliction of emotional distress (IIED), alleging that Koniag "subjected them to a deliberate campaign of harassment, intimidation, and humiliation designed with the purpose of improving Koniag's board and management election prospects." The superior court dismissed the IIED counterclaim on summary judgment.

 An IIED claim requires evidence that " '[t]he offending party, through extreme or outrageous conduct, intentionally or recklessly caused severe emotional distress or bodily harm to another.' " [30] Liability is found " 'only where the conduct [is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " [31] The trial court must make a threshold determination "whether the severity of the emotional distress and the conduct of the offending party warrant an instruction on intentional infliction of emotional distress." [32] We will not overturn this threshold determination absent an abuse of discretion.[33]

Meidinger argues that it was extreme and outrageous for Koniag to (1) file suit three days before the election seeking damages it could not prove and did not want; and (2) send its shareholders before the election a flyer alleging violations of Alaska securities law by the Meidinger slate. Because Koniag's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," [34] the superior court did not abuse its discretion by making this threshold determination. Furthermore, to the extent that the IIED claim

is based on Koniag's lawsuit against the Meidinger slate, filing that lawsuit is privileged and cannot be the basis of IIED liability.[35] We therefore affirm the grant of summary judgment.

### 3. Breach of fiduciary duty

 The Meidinger slate's breach-of-fiduciary-duty counterclaim alleged that "Koniag owed a duty to Judy Meidinger, Jana Larsen[-Horne], and Diane Cooper not to initiate any lawsuit against them that would not be in the overall interest of shareholders." The superior court dismissed the counterclaim on summary judgment, stating that "the evidence and arguments presented do not justify the maintenance of this cause of action."

 *"Directors, officers, and possibly controlling shareholders,* owe fiduciary duties to their corporation and possibly to other shareholders." [36] But Meidinger cites, and we have found, no authority for the proposition that *a corporation,* such as Koniag, owes its shareholders fiduciary duties. Because we are not persuaded that a corporation owes its shareholders fiduciary duties, we conclude that the superior court properly dismissed the breach-of-fiduciary-duty counterclaim on summary judgment.

### G. It Was Not Error to Award Koniag Attorney's Fees and Costs.

 The superior court awarded Koniag, as the prevailing party, costs of $10,773 and partial attorney's fees of $37,784 under Alaska Civil Rules 79 and 82. Meidinger argues that it was an abuse of discretion to characterize Koniag as the prevailing party for purposes of awarding attorney's fees and costs, because (1) the superior court dismissed Koniag's defamation cause of action

---

30. *Coulson v. Marsh & McLennan, Inc.,* 973 P.2d 1142, 1148–49 (Alaska 1999) (quoting *Landers v. Municipality of Anchorage,* 915 P.2d 614, 619 n. 14 (Alaska 1996)).

31. *Chizmar v. Mackie,* 896 P.2d 196, 208 (Alaska 1995) (quoting *Oaksmith v. Brusich,* 774 P.2d 191, 200 (Alaska 1989)).

32. *Id.* at 208 (citation omitted).

33. *See id.* at 209.

34. *Id.* at 208.

35. *See, e.g., Greyhound Lines, Inc. v. Duhon,* 434 S.W.2d 406, 413 (Tex.App.1968) (holding that institution and prosecution of lawsuit exposes plaintiff to no potential causes of action except malicious prosecution or abuse of process).

36. Harry G. Henn & John R. Alexander, *Laws of Corporations* § 235, at 625 (3d ed.1983) (emphasis added).

on summary judgment; and (2) the superior court did not award Koniag compensatory or punitive damages, although Koniag had originally requested such damages.[37]

 The superior court has discretion to determine which party is the prevailing party for purposes of awarding attorney's fees and costs, and we will reverse only for an abuse of discretion.[38] The prevailing party is the one "who has successfully prosecuted or defended against the action, the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.' "[39] A party need not prevail on all the issues in a case to be the prevailing party.[40]

The main issue in this case was whether the Meidinger slate's proxy solicitations contained materially false and misleading statements. The superior court ruled that two statements were materially false and misleading as a matter of law, and the court granted Koniag injunctive relief. It was therefore not an abuse of discretion to characterize Koniag as the prevailing party for purposes of awarding attorney's fees and costs.

H. *The Issues Raised in Koniag's Cross–Appeal Have Not Been Properly Preserved.*

 In its cross-appeal, Koniag contends that the superior court erroneously denied Koniag's summary judgment motion (or granted only partial summary judgment) with respect to a number of its claims alleging materially false or misleading proxy solicitation statements by the Meidinger slate. Koniag argues that the Meidinger slate made materially false or misleading statements regarding (1) the taxability of assets distributed to the proposed trust; (2) the removal of trustees; (3) the accountability of trustees to Koniag's shareholders; (4) the return of certain lands to the villages of Karluk and Lar-

sen Bay; (5) the withholding of information by Koniag's management from the corporation's shareholders; and (6) Koniag's lack of profitability.

But Koniag has not preserved these issues for review in its cross-appeal. After the superior court expressed its willingness to grant Koniag injunctive relief based upon the statements the court found to be materially false and misleading as a matter of law, Koniag dismissed its remaining claims against the Meidinger slate. Although Koniag's notice of intent not to seek further trial of claims purported to reserve its remaining claims for our review by cross-appeal, such a reservation is ineffective. By dismissing these claims voluntarily, Koniag gave up any right to have their merits considered on appeal. It is also not necessary for us to consider Koniag's cross-appeal arguments as alternative grounds for affirmance. We therefore do not reach the merits of Koniag's cross-appeal.

## IV. CONCLUSION

For these reasons, we AFFIRM the judgment of the superior court in all respects.

MATTHEWS, Justice, not participating.

---

37. In March 1998 Koniag withdrew with prejudice its request for compensatory and punitive damages.

38. *See Buoy v. ERA Helicopters, Inc.,* 771 P.2d 439, 448 (Alaska 1989).

39. *Day v. Moore,* 771 P.2d 436, 437 (Alaska 1989) (citation omitted).

40. *See id.* (citation omitted).