ALASKA STATE EMPLOYEES ASSOCI-
ATION, Ethel L. Lewis, Margaret Tol-
man, and Doreen Sullivan–Garcia, Ap-
pellants,

v.

ALASKA PUBLIC EMPLOYEES
ASSOCIATION, Appellee.

No. S–3665.

Supreme Court of Alaska.

June 21, 1991.

Don Clocksin, Wagstaff, Pope & Clocksin, Anchorage, for appellants.

James A. Gasper, Jermain, Dunnagan & Owens, P.C., Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

In 1988, appellant Alaska State Employees Association (ASEA) was chosen by certain state employees to replace appellee Alaska Public Employees Association (APEA) as their exclusive bargaining representative. There was a four-month delay after ASEA won the election until it was formally certified as the representing union. APEA continued to collect union dues during these months and later sent demands for delinquent dues to members then represented by ASEA. ASEA and three individual government employees sought to enjoin APEA from collecting union dues for this period and to force APEA to disgorge dues allegedly wrongfully collected. The plaintiffs also sought to enjoin the collection of dues for other periods, dues which APEA had allegedly waived its right to collect. The suit was eventually dismissed,[1] and APEA then filed for sanctions under Alaska Rule of Civil Procedure 11. The superior court granted APEA's motion, awarding $3,029.50 under Rule 11. This appeal followed. We conclude that the superior court abused its discretion in awarding sanctions under Rule 11 and therefore reverse the award.

## BACKGROUND

APEA was the exclusive bargaining representative for state employees in the General Government Unit (GGU). In December 1987, ASEA and the Alaska Public Employees, Local 71 (Local 71) filed petitions challenging APEA's right to represent the GGU employees. The State Labor Relations Agency (SLRA) held a three-way election in May of 1988 in which ASEA received the most votes, followed by Local 71, with APEA coming in a close third. APEA filed objections to the election results on May 23, 1988. The SLRA dismissed these objections by an order and decision dated June 21, 1988. ASEA defeated Local 71 in a run-off election held on September 20 and 21, 1988. On September 28, 1988, ASEA was certified as the new exclusive bargaining representative for GGU employees.

In November 1988, APEA sent letters to over 1,000 of its former GGU members demanding payment of delinquent dues. APEA claimed that it was owed dues for representation until September 28, 1988.

In December 1988, ASEA and three members of the GGU[2] filed a suit against APEA seeking injunctive and monetary relief.[3] APEA had demanded $679 from plaintiff Ethel Lewis, which apparently covered two years of back dues. Plaintiff Margaret Tolman was asked to pay $56. After the May election, she had contacted the state and asked that no more union dues be deducted from her paycheck and sent to APEA. APEA sought $56 from plaintiff Doreen Sullivan-Garcia, who was

1. ASEA did not appeal the order dismissing the suit.

2. For the sake of simplicity, we will henceforth refer to the plaintiffs collectively as simply "ASEA" unless otherwise noted.

3. According to the complaint, APEA was wrongfully trying to collect union dues covering the period between when it lost the election in May and the time ASEA was certified as the new bargaining representative in September. The complaint also alleged that due to "bad management and/or practices of APEA," APEA waived the right to (or was estopped from) collecting

certain dues. In addition, the complaint alleged that by failing to provide timely notice of delinquency to certain members, APEA breached its duty of good faith and fair dealing with those members. Also, the complaint urged the court to apply the "equitable Doctrine of Laches" to bar APEA's attempted collection of these dues until the court could determine if APEA was entitled to them. Finally, the complaint alleged that APEA had wrongfully collected more than $650,000 from GGU members after losing the election and sought a judgment against APEA for these dues.

first hired after the SLRA dismissed APEA's objections to the May election.

APEA moved to dismiss the complaint on February 24, 1989. The superior court ordered ASEA's case dismissed. APEA then moved for Rule 11 sanctions. On October 4, 1989, the court awarded APEA $3,029.50 under Rule 11.

## STANDARD OF REVIEW

■ We review the award of sanctions under Rule 11 for abuse of discretion. *Keen v. Ruddy,* 784 P.2d 653, 658 (Alaska 1989). In *Keen,* we adopted the approach of the United States Court of Appeals for the Seventh Circuit which "reviews all factors relevant to the issue of whether the attorney's inquiry into facts and law was reasonable under an abuse of discretion standard." *Id.*

## DISCUSSION

The version of Alaska Rule of Civil Procedure 11 in effect when the superior court awarded sanctions against ASEA states in part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension,

modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless expense in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....[4]

■ Under Rule 11, a court cannot impose sanctions on a party simply for losing.[5] Instead, a court imposes sanctions on an attorney or party when it finds that the pleading signed by him: 1) is not well grounded in fact, or 2) is not warranted by existing law or a reasonable argument for its extension, modification or reversal, or 3) was interposed for an improper purpose. *Keen,* 784 P.2d at 658; 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1335, at 58–59 (2d ed. 1990). APEA does not contend that ASEA's complaint was not well grounded in fact, nor was there a finding by the superior court that ASEA filed its complaint for an improper purpose.[6] Thus, the only issue in this appeal is whether ASEA's complaint was warranted by existing law or a good faith argument for its extension, modification, or reversal.[7]

APEA argues that ASEA's arguments were not justified by the cases upon which it relied and that ASEA relied on theories

---

**4.** We recently amended Rule 11 deleting the mandatory sanction provision. *See* Supreme Court Order 1009 (October 12, 1989) (effective January 15, 1990). This case is decided under the previous version of Rule 11, which was virtually identical to its federal counterpart.

**5.** As the Advisory Committee Notes to the federal version of Rule 11 state, "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."

**6.** In granting APEA's motion for Rule 11 sanctions, the superior court noted that ASEA's suit was "poorly founded." The court said nothing to indicate that ASEA had filed its complaint with an improper purpose. Although APEA argues that the evidence supported a finding of an

improper purpose, APEA fails to cite any language indicating where the court made such a finding. To the extent that APEA argues that the trial court erred in failing to find an improper purpose behind ASEA's complaint, the court's decision was not clearly erroneous. Alaska R.Civ.P. 52(a).

Furthermore, as ASEA notes, the issue of improper motive was raised for the first time before the superior court in APEA's reply memorandum (in support of its motion for Rule 11 sanctions). Thus, ASEA did not have a chance to reply to the allegation of improper motive. As a matter of fairness, the trial court could not consider an argument raised for the first time in a reply brief. In effect, APEA has abandoned the issue of improper purpose.

**7.** The violation of this requirement alone is sufficient to justify the imposition of sanctions. *See Keen,* 784 P.2d at 658.

of relief which were inappropriate to prosecute a case. ASEA concedes the general rule is that "the date of certification of an election result is the effective date of any basic change in the relationship of the parties resulting from the election." Yet ASEA argues that there are several exceptions or good faith arguments for exceptions to this general rule. ASEA also maintains that APEA has failed to demonstrate any reason why ASEA could not rely on the theories of estoppel, waiver, and laches.

■ In our view, ASEA's position was not so devoid of merit as to justify the imposition of sanctions.

### A. Were ASEA's Legal Arguments Frivolous?

1. ASEA's Argument That Dues Are Not Owed After Members Vote To Remove A Union As Their Bargaining Representative.

ASEA argues that *Lyons Apparel, Inc.,* 218 N.L.R.B. 1172 (1975), constitutes an exception upon which it could reasonably base its suit. In *Lyons Apparel,* the NLRB decided that, after a vote to deauthorize the union,[8] the union could not demand that employees hired after the vote pay initiation fees and dues pending certification of the election results. *Id.*

APEA maintains that *Lyons Apparel* is distinguishable from the present case because it involved a deauthorization election rather than a representation election. The significance of this distinction is never clearly explained by APEA. It is true that *Lyons Apparel* applies only to "new hires," i.e., employees hired in the period between the deauthorization election and the certification of the results. Thus,

ASEA's argument rests on solid ground with respect to plaintiff Sullivan–Garcia, who was hired after APEA lost the representation election. In addition, ASEA's argument that *no* employee, new or old, needs to pay dues after the date of the election, though not directly supported by *Lyons Apparel,* constitutes, in our view, "a good faith argument for the extension, modification, or reversal of existing law" as permitted under Rule 11.[9]

2. ASEA's Argument That Dues Are Not Owed Where A Dues Check–Off Authorization Is In Effect, But The State Failed To Collect The Dues.

■ Plaintiff Lewis apparently had a dues check-off authorization in effect, but through miscommunication between APEA and the state, no dues were collected. ASEA argues that under these facts and in light of *Ferro Stamping & Mfg. Co.,* 93 N.L.R.B. 1459 (1951), ASEA justifiably believed that APEA was not entitled to the dues it sought to collect from Lewis.

*Ferro Stamping* involved an attempt by a union to secure the discharge of an employee for failure to pay dues where the employee had signed a dues check-off permitting the employer to deduct the appropriate amount from each paycheck but the employer failed to do so. *Id.* at 1506. The NLRB determined that by signing the dues check-off the employee had thus fulfilled his obligation to tender periodic dues as required to retain membership in the union. *Id.* at 1461–62.

APEA dismisses *Ferro Stamping* as distinguishable since it "clearly involved an employee's discharge, which was not an element present in [ASEA's] suit." APEA fails to state the significance of the distinction. While this distinction ultimately may

---

**8.** "The effect of an affirmative deauthorization vote is to relieve employees … of the requirements imposed by the union security agreement." C. Morris, *The Developing Labor Law* 1383 (2d ed. 1983). A union security agreement requires that all employees be members of the union (or pay to the union fees equivalent to membership dues).

**9.** APEA argues that the deauthorization vote in *Lyons Apparel* was based on a federal law which

does not have a counterpart under Alaska law. This, however, would not preclude Alaska courts from adapting the *Lyons Apparel* approach to situations that arise under Alaska law. APEA also suggests that *West Coast Cintas Corp.,* 291 N.L.R.B. No. 20 (1988) constitutes a departure from *Lyons Apparel.* However, *West Coast Cintas* simply reaffirmed that *Lyons Apparel* applies only to "new hires."

have justified the superior court in dismissing ASEA's suit, we reiterate that merely losing is not sanctionable. The question is whether *Ferro Stamping* provided a good faith argument for ASEA's position. ASEA's argument that no dues were owed where employees had signed a dues check-off but the state had failed to collect the dues was not totally unfounded.

B. *Were ASEA's Theories of Relief Appropriate Theories With Which To Enjoin APEA From Collecting Allegedly Delinquent Dues?*

We now turn to APEA's contention that ASEA used theories of relief, such as estoppel, waiver, and laches, which are actually affirmative defenses and which cannot be used as grounds to prosecute a case. These theories were advanced in ASEA's effort to enjoin APEA from collecting allegedly delinquent dues.[10]

■ As for the estoppel argument, the general rule is that equitable estoppel will not support a claim for affirmative relief.[11] *Great Western Savings Bank v. George W. Easley Co., J.V.*, 778 P.2d 569, 579 (Alaska 1989). We have, however, noted that there is contrary authority,[12] and employing equitable estoppel as a basis for

monetary relief is not plain error. *Id.* at 578–79.

■ In the context of an injunction, we see no necessary bar to relying on estoppel as the basis for relief.[13] In *Municipality of Anchorage v. Schneider*, 685 P.2d 94 (Alaska 1984), an individual sought to prevent the municipality from revoking a building permit which it had issued. The trial court ruled in favor of the individual, and on appeal we affirmed on the grounds that the municipality was estopped from revoking the permit. *Id.* at 98. Although the individual was the defendant rather than the plaintiff, the case nonetheless represents an instance in which a claim for injunctive relief was successfully maintained on estoppel grounds. Further, in *Fields v. Kodiak City Council*, 628 P.2d 927, 931 n. 3 (Alaska 1981), we stated in dictum that a claim to estop a city from enforcing a zoning ordinance could be brought as an action for declaratory judgment. In addition, it is our view that waiver and laches may arguably support an action for injunctive relief. Each of these theories is defensive in nature, and it is not unreasonable to request an injunction seeking to preserve the status quo based on any of them.[14]

10. We note that ASEA also sought monetary relief against APEA. However, a close examination of ASEA's complaint reveals that ASEA's claim for monetary relief was not based on theories of estoppel, waiver, or laches. These theories were used solely as a basis to prevent APEA from collecting or threatening to collect union dues. ASEA's claim for monetary relief was instead based on the arguments discussed previously, which we have determined not to be sanctionable under Rule 11. *See supra* Part A.1.

11. Equitable estoppel involves (1) the assertion of an position by conduct or words, (2) reasonable reliance thereon by an adverse party, and (3) resulting prejudice. *Great Western Savings Bank v. George W. Easley Co., J.V.* 778 P.2d 569, 579 (Alaska 1989). This is distinguished from promissory estoppel which ordinarily involves a promise which, as the promisor should reasonably have anticipated, is relied on. *Glover v. Sager*, 667 P.2d 1198 (Alaska 1983). The estoppel alleged by ASEA is clearly of the first type.

12. *E.g., Oswald v. County of Aiken*, 281 S.C. 298, 315 S.E.2d 146 (App.1984).

13. Citing *Stanton v. Fuchs*, 660 P.2d 1197, 1198 n. 2 (Alaska 1983), APEA maintains that eq-

uitable estoppel is an affirmative defense. *Stanton*, however, did not consider whether, under any circumstances, estoppel could serve as the basis of a claim for an injunction. In *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 380 n. 7 (Alaska 1984), we indicated skepticism that equitable estoppel could serve as the basis for an independent claim for relief. However, we did not decide the issue. Moreover, *Bubbel* was factually distinguishable in that the plaintiff used equitable estoppel as the basis of a claim for monetary relief, not an injunction.

14. In addition, the substance of ASEA's estoppel claim—as opposed to the propriety of using it as the basis of a claim for relief—is not frivolous. Plaintiff Ethel Lewis claims that the $679 demanded from her by APEA stems from a mistake APEA made after she was laid off for a short time in July of 1986. She also claims that she was specifically told by APEA that she was a member in good standing after that layoff. A reading of Lewis' affidavit reveals that she has alleged facts sufficient to support a reasonable claim for estoppel. *See supra* note 11.

## CONCLUSION

For the preceding reasons, we conclude that the superior court abused its discretion in awarding sanctions against ASEA. REVERSED.