*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA BUILDING, INC., | ) | |
| | ) | Supreme Court No. S-16371 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-05969 CI |
| v. | ) | |
| | ) | O P I N I O N |
| LEGISLATIVE AFFAIRS AGENCY | ) | |
| and 716 WEST FOURTH AVENUE | ) | No. 7193 – August 25, 2017 |
| LLC, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: James B. Gottstein, Law Offices of James B. Gottstein, Anchorage, for Appellant. No appearance by Appellees Legislative Affairs Agency or 716 West Fourth Avenue LLC.

Before: Stowers, Chief Justice, Winfree, and Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.
BOLGER, Justice, dissenting.

## I.      INTRODUCTION

A building owner sued an agency of the Alaska Legislature and a private developer, alleging that the agency and developer had entered into an illegal lease for the building next door. The complaint sought both declaratory relief invalidating the lease

and monetary compensation calculated as a percentage of the savings once the lease was invalidated. The building owner succeeded in invalidating the lease but lost the compensation claim; the superior court concluded that the claim had no basis in Alaska law. The court later found that the compensation claim was frivolous and justified a sanction under Alaska Civil Rule 11. The building owner appeals that decision.

We conclude that the compensation claim was based on a nonfrivolous argument for establishing new law and thus did not violate Rule 11. We therefore reverse.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In September 2013 the Alaska Legislative Affairs Agency executed a lease agreement with 716 West Fourth Avenue LLC (716 West Fourth) for the Legislative Information Office building (LIO building) in downtown Anchorage. The agreement called for significant renovation and expansion. 716 West Fourth agreed to demolish an adjoining building and increase the square footage of the LIO building from 23,645 to 64,048 — a 170% increase in space. The Agency agreed to pay up to $7.5 million for certain "tenant improvements," which the superior court later characterized as a "virtual 'gutting' and reconstruction of the existing rental space." The agreement also extended the term of the lease and increased the Agency's monthly rent from $56,863.05 to $281,638.00

### B.    Proceedings

Alaska Building, Inc., the owner of property next door to the LIO building, filed a lawsuit in superior court challenging the lease agreement and renovation. Count one of the complaint sought a declaration that the lease agreement violated AS 36.30.083(a), which permits the Alaska Legislature to extend an existing real property lease — rather than soliciting competitive bids for a new lease pursuant to

certain statutory procedures — only if the extension would achieve "a minimum cost savings of at least 10 percent below the market rental value."  A second count of the complaint alleged that the expansion and renovation project "was negligently designed, managed, or constructed, . . . resulting in damage to the Alaska Building."  The complaint's prayer for relief included the claim central to this appeal:  that if Alaska Building succeeded in invalidating or reforming the lease agreement, it should receive judgment in an amount equal to 10 percent of the resulting savings to the Agency.

On the Agency's motion, the superior court ordered Alaska Building to sever count two — the property damage claim — from the complaint and file it as a separate action.  Alaska Building accordingly filed an amended complaint that omitted count two, while retaining the claim for 10 percent of the Agency's potential savings. The defendants then moved for a ruling on that claim, contending that it had no legal basis.  The superior court granted the motion, concluding that Alaska Building had "no legal grounds on which to request 10% of any lease savings."

The parties then litigated the remaining claims.  Alaska Building continued to argue that the lease agreement was illegal, while the Agency argued that the lease was a valid "extension" under AS 36.30.083 and that some portions of the dispute were nonjusticiable political questions.  716 West Fourth argued for "summary dismissal" of all remaining claims on justiciability grounds.  The court ruled in Alaska Building's favor, deciding that the issue was justiciable and that the lease violated the law because it was "not an agreement to extend a lease but rather a wholly new lease instrument altogether and should have been competitively bid."

This ruling ended the parties' substantive dispute.  The court determined that Alaska Building was the prevailing party on the lease validity issue and awarded it attorney's fees of over $26,000 against 716 West Fourth, of which approximately $17,000 was jointly owed by the Agency.  The Agency moved for attorney's fees as

well, arguing that it had prevailed against Alaska Building on count two — the property damage claim that had been severed — and the percentage-of-savings claim. The Agency also requested sanctions under Alaska Civil Rule 11 because of the percentage-of-savings claim, arguing that Alaska Building "had no good faith basis or legal support for bringing" it. The court granted the Agency's fees motion, concluding that the percentage-of-savings claim was frivolous and awarding the Agency $2,217.80 in attorney's fees under Alaska Civil Rules 82 and 11.

Alaska Building appeals only the Rule 11 decision, arguing that the percentage-of-savings claim, though novel and ultimately unsuccessful, was not frivolous. The Agency and 716 West Fourth did not participate in the appeal.

## III.   STANDARD OF REVIEW

We review for abuse of discretion a trial court's decision to impose Rule 11 sanctions,[1] and we will find an abuse of discretion only when the trial court's decision is "manifestly unreasonable."[2] We have held that the deferential abuse of discretion standard is appropriate in the Rule 11 context because the trial court, unlike an appellate court, is "intimate[ly] familiar[] with the proceedings below"[3] and generally "better

---

[1]     *Enders v. Parker*, 125 P.3d 1027, 1031 (Alaska 2005) (citing *Keen v. Ruddy*, 784 P.2d 653, 658 (Alaska 1989)).

[2]     *Weidner v. State, Dep't of Transp. & Pub. Facilities*, 860 P.2d 1205, 1212 n.8 (Alaska 1993) (quoting *Gates v. City of Tenakee Springs*, 822 P.2d 455, 464 (Alaska 1991)).

[3]     *Keen*, 784 P.2d at 658 (citing *R.K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir. 1987)).

situated" than an appellate court "to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11."[4]

But sanctions under Rule 11(b)(2) — which requires a court to determine whether a party's "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for . . . establishing new law" — are unlikely to depend solely on questions of fact. Although a Rule 11 motion may require the court to "consider factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis" of the party's position,[5] "whether a pleading is 'warranted by existing law or a good faith argument' for changing the law" is likely to be a legal issue.[6] But a trial court's erroneous determination of a legal issue, like its clearly erroneous finding of fact, may persuade us that it was an abuse of discretion to award Rule 11 sanctions.[7]

Rule 11 "creates an objective standard of 'reasonableness under the circumstances.' "[8] The rule may therefore require a court to consider a party's legal position within a particular factual context; for example, a court may need to consider the amount of time an attorney had to inquire into the relevant facts and applicable law before meeting a filing deadline. But in this case the superior court's decision did not depend on the circumstances of the case or the adequacy of the attorney's preliminary

---

[4]     *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990).

[5]     *Id.* at 399.

[6]     *Id.*

[7]     *Id.* at 402 ("[The abuse of discretion] standard would not preclude the appellate court's correction of a district court's legal errors.").

[8]     *Keen*, 784 P.2d at 658 (citing *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986)).

inquiry. The court did not hear evidence or make findings of fact but determined that Alaska Building's percentage-of-savings claim was frivolous as a matter of law.

The issue before us is thus not fact-dependent and does not require "intimate familiarity" with the superior court proceedings. The primary question is a "purely legal" one, more analogous to "whether the attorney's legal argument was correct" than to "whether an attorney's prefiling inquiry was reasonable."[9] In determining whether the percentage-of-savings claim was a "a nonfrivolous argument . . . for establishing new law,"[10] we apply our independent judgment and "adopt the rule of law most persuasive in light of precedent, reason, and policy."[11]

## IV. DISCUSSION

Alaska Building argues first that the superior court abused its discretion because it "failed to make a clear record concerning the reason[]" for imposing Rule 11 sanctions. We have held that trial courts "should, as a matter of sound practice, make a clear record concerning the reason for imposing [a] particular sanction" and cite "the authority relied upon."[12] We have cautioned that "[f]ailure to do so may require a

---

[9] *See Cooter & Gell*, 496 U.S. at 401 ("Rather than mandating an inquiry into purely legal questions, such as whether the attorney's legal argument was correct, the Rule requires a court to consider issues rooted in factual determinations. For example, to determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a case.").

[10] Alaska R. Civ. P. 11(b)(2).

[11] *Enders v. Parker*, 125 P.3d 1027, 1029 (Alaska 2005) (describing our standard of review for "questions of law" (citing *Catalina Yachts v. Pierce*, 105 P.3d 125, 128 (Alaska 2005))).

[12] *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1227 (Alaska 1992) (quoting *Esch v. Superior Court*, 577 P.2d 1039, 1043 (Alaska 1978)).

reversal and remand for entry of such findings."[13]  The sanctions order in this case stated "that Plaintiff's request for relief in the form of 10% of the alleged savings to the [Agency] for lease invalidation was frivolous" but did not explain why.  The superior court did discuss the claim fully in its earlier order granting the defendants' motion for a ruling of law.  The court summarized Alaska Building's asserted rationale — "to make meaningful the right of citizen-taxpayers to seek judicial redress of illegal government action" — but concluded that the claim had "no legal grounds":  the court reasoned that "there [was] no statutory authority that would allow th[is] court to create such an incentive" to public interest litigation and that the "argument is one of public policy, which is better left to [the] legislature."  But that earlier order did not characterize the claim as frivolous or imply that it had been brought in bad faith.  Given the absence of relevant findings, our usual course would be to vacate the sanctions order and remand for further proceedings.[14]

In this case, however, a remand is not necessary because we agree with Alaska Building's argument that, as a matter of law, the percentage-of-savings claim was not frivolous.[15]  While the claim had little reasonable likelihood of success, we conclude that it was a "nonfrivolous argument . . . for establishing new law," something Rule 11 expressly permits.[16]

Rule 11 provides:

---

[13]     *Id.* (quoting *Esch*, 577 P.2d at 1043).

[14]     *Id.* (stating that, in the absence of an explanation of the "reasons for imposing the sanction," "our normal procedure would be to remand the award of sanctions to the superior court for entry of findings").

[15]     *See id.* ("We decline to remand in this case . . . because we find no evidence in the record which could possibly support an entry of sanctions under Rule 11.").

[16]     *See* Alaska R. Civ. P. 11(b)(2).

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

As discussed above, "[t]he Rule creates an objective standard of 'reasonableness under the circumstances,' and is intended to be more stringent than a mere 'good faith' formula."[17] On the other hand, the rule should not be used to " 'stifle creative advocacy' or 'chill an attorney's enthusiasm in pursuing factual or legal theories.' "[18] As we have acknowledged before, "a court cannot impose sanctions on a party simply for losing."[19] "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."[20]

---

[17]     *Keen v. Ruddy*, 784 P.2d 653, 658 (Alaska 1989) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986)).

[18]     *Enders v. Parker*, 125 P.3d 1027, 1032 (Alaska 2005) (quoting *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1194 (5th Cir. 1996)); *see also Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) ("[Rule 11] sanctions are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel." (quoting *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994))).

[19]     *Alaska State Emps. Ass'n v. Alaska Pub. Emps. Ass'n*, 813 P.2d 669, 671 & n.5 (Alaska 1991) ("[T]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." (quoting Fed. R. Civ. P. 11 (1983 amendment) advisory committee's notes).

[20]     *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990).

The superior court concluded that Alaska Building's percentage-of-savings claim had no basis in Alaska law. This conclusion, while unassailable, shows only that Alaska Building was unlikely to prevail on the merits unless it could establish new law; it does necessarily follow that the claim was frivolous.

We have reversed sanctions awards in cases where the applicable law provided no "direct[] support[]" for the sanctioned party's position.[21] In *Alaska State Employees Association v. Alaska Public Employees Association*, we considered whether the superior court abused its discretion by sanctioning a party for making two allegedly frivolous arguments that depended on distinguishable federal precedent.[22] We reversed the sanctions award, reasoning that while the federal precedent did not "directly support[]" the party's position, the party nevertheless advanced a " 'a good faith argument for the extension, modification, or reversal of existing law' as permitted under Rule 11."[23]

We reached a similar conclusion in *Luedtke v. Nabors Alaska Drilling, Inc.*[24] A defendant in that case sought Rule 11 sanctions against a plaintiff, alleging that he "adhered to several frivolous arguments" throughout the course of the superior court proceedings.[25] Several of these arguments we found to be colorable —

---

[21]     *See, e.g.*, *Alaska State Emps. Ass'n*, 813 P.2d at 672-73; *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1228-29 (Alaska 1992).

[22]     *Alaska State Emps. Ass'n,* 813 P.2d at 672.

[23]     *Id.*

[24]     834 P.2d at 1228-29.

[25]     *Id.* at 1228.

not frivolous at all.[26]  Another argument involved a claim for remedies including back pay, which the plaintiff continued to assert even after the superior court had ruled that back pay was not an available remedy.[27]  We conceded that the plaintiff "might have followed a different course of action, such as to petition for review of the superior court's order, wait until final judgment to challenge it on appeal, or waive the issue."[28]  But we did not consider the plaintiff's chosen course of action sanctionable.[29]  Instead, we concluded that the plaintiff's attorney was "engaging in zealous advocacy on behalf of his client, not frivolity, in continuing to press the issue of remedies."[30]

In contrast, we have upheld Rule 11 sanctions based on frivolous claims when the sanctioned party exhibited an improper or abusive purpose.  In *Keen v. Ruddy*, for example, we upheld an award of sanctions after concluding that the plaintiffs' "legal theories were frivolous" and that the superior court reasonably found that the plaintiffs "acted in bad faith in bringing their suit."[31]  We further observed that the two claims at issue — one for abuse of process and another for declaratory judgment  —  failed, respectively, because the allegations were "vague" and "insufficient" and because "there was no actual controversy" between the parties.[32]  And in *Alaska Federal Savings & Loan Ass'n of Juneau v. Bernhardt*, while emphasizing that the test under Rule 11 was

---

[26]  *Id.*

[27]  *Id.*

[28]  *Id.*

[29]  *Id.*

[30]  *Id.*

[31]  784 P.2d 653, 655-56, 658 (Alaska 1989).

[32]  *Id.* at 655-56.

one of objective reasonableness, we affirmed a superior court's denial of sanctions in part because it was "possible . . . to reasonably infer that no improper purpose was present" in the attorney's failure to concede that he had erroneously sued someone other than the proper defendant.[33]

We do not mean to imply that sanctions may never be justified when an attorney asserts a claim that is obviously lacking in merit. But the clearer case for sanctions based on the assertion of a claim involves both a lack of merit and an improper purpose, as in *Keen*.[34] As a general proposition, we agree that "Rule 11 is designed to deter parties from abusing judicial resources, not from filing [claims]."[35]

Alaska Building readily conceded below that a percentage-of-savings remedy was a novel idea and would need to be judicially created. The question for us is whether the claim represents "a nonfrivolous argument . . . for establishing new law," as judged by a standard of objective reasonableness. Alaska Building explains that it brought the claim as "a serious attempt to make meaningful the right of citizen-taxpayers to seek judicial redress of illegal government[] action." It argues that the claim is a reasonable and necessary response to the Alaska Legislature's partial abrogation of the

---

[33] 794 P.2d 579, 583 (Alaska 1990).

[34] We emphasize that any inquiry into the attorney's purpose remains one of objective reasonableness, not subjective intent. *See Keen*, 784 P.2d at 658.

[35] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 411 (1990) (Stevens, J., dissenting in part).

-11-                                                              **7193**

judicially-created "public interest exception" to Civil Rule 82.[36] Understanding Alaska Building's legal position requires discussion of this context.

Under Rule 82 a prevailing party may recover a percentage of its attorney's fees from the nonprevailing party. In 1974, however, we determined that Rule 82's fee shifting provisions should not "penalize a party for litigating a good faith claim" on behalf of the general public.[37] We therefore created a public interest exception to the rule, holding "[a]s a matter of sound policy" that "it is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts."[38] We later expanded the exception, holding that public interest litigants not only were protected from adverse fee awards but also, if successful, were entitled to full fee awards themselves.[39]

---

[36] *See Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 279-82 (Alaska 2015) (discussing the public interest exception and the legislature's abrogation). Public interest litigation "seeks to enforce public law entitlements . . . in such diverse contexts as welfare, housing, education, employment discrimination, prisoner's rights, and First Amendment interests." Arthur B. LaFrance, *Federal Rule 11 and Public Interest Litigation*, 22 VAL. U. L. REV. 331, 331 n.1 (1988). "[P]ublic interest attorneys, by litigating on behalf of a few individual plaintiffs, seek to further and preserve basic constitutional rights enjoyed by many. This type of litigation often involves lawsuits on behalf of the poor and powerless, and may raise controversial or 'unpopular' constitutional issues such as prisoners' rights and discrimination claims of various kinds." Donna Marino, *Rule 11 and Public Interest Litigation: The Trend Toward Limiting Access to the Federal Courts*, 44 RUTGERS L. REV. 923, 925 n.6 (1992).

[37] *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974) (citing *Malvo v. J. C. Penney Co., Inc.*, 512 P.2d 575, 587 (Alaska 1973)), *superseded by statute*, ch. 86, §§ 1-2, SLA 2003 (codified at AS 09.60.010(b)-(e)).

[38] *Id.*

[39] *Anchorage v. McCabe*, 568 P.2d 986, 991, 993-94 (Alaska 1977) (citing *La Raza Unida v. Volpe*, 57 F.R.D. 94, 101 (N.D. Cal. 1972)), *superseded by statute*,

(continued...)

In 2003 the Alaska Legislature eliminated the public interest exception and replaced it with a narrower statutory exception that applies only to constitutional claims.[40] Alaska Building argues that this statutory exception is insufficient, and that because of it, "citizens' and taxpayers' right" to challenge illegal government action in the courts "has become a hollow paean." It claims that because public interest litigants may now face substantial exposure under Rule 82 if they lose, the Legislature "has left government wrongdoing in Alaska essentially unchallenged in the courts," and a judicially-developed remedy like that advanced in the percentage-of-savings claim is necessary for addressing government misconduct like what was alleged in this case.[41]

Alaska Building's position does not find direct support in this court's precedent or the Alaska Statutes, and the superior court properly concluded that such a remedy was beyond its authority to grant. But we have previously acknowledged the value of public interest litigation,[42] and federal law provides for a type of recovery

---

[39](...continued)
ch. 86, §§ 1-2, SLA 2003 (codified at AS 09.60.010(b)-(e)).

[40]    Ch. 86, §§ 1-2, SLA 2003 (codified at AS 09.60.010(b)-(e)); *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 253-54 (Alaska 2009); *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 393-95 (Alaska 2007) (providing the history of ch. 86, SLA 2003 (referred to as House Bill (H.B.) 145)).

[41]    The superior court's decision of the merits, which is not before us on appeal, lends indirect support to Alaska Building's position. The court found that the Agency's agreement with 716 West Fourth violated both the letter and the spirit of the state procurement code; it observed that "[a] court finding that this leasing scheme could be sole-sourced would eviscerate the competitive principles of the state procurement code."

[42]    *See McCabe*, 568 P.2d at 991 ("The policy of encouraging public interest litigants . . . supports an award of attorney's fees to the prevailing plaintiffs in this and all other public interest cases.").

analogous to what Alaska Building requested. Under the False Claims Act a private party may sue to challenge "a false or fraudulent claim" presented to the United States government "for payment or approval."[43] The plaintiff sues "in the name of the Government" and if successful obtains a civil judgment for the government against a party that attempted to defraud or deceive a government agency.[44] The Act authorizes treble damages, and the private plaintiff who sues under its provisions may receive 15 to 30% of the total damages recovered on the government's behalf.[45] Since the Act was first enacted during the Civil War, it has proven a successful tool for discovering and discouraging profiteering, corruption, and waste.[46]

Alaska Building argues that private citizens and organizations in Alaska should have a similar economic incentive to challenge illegal "claims to government payment" like the lease agreement in this case.[47] While the analogy to the False Claims Act would reasonably lead one to believe that the remedy is legislative, not judicial, we cannot say that Alaska Building's claim lacks a public-policy rationale or an existing analogue (albeit an easily distinguishable one).

---

[43]    31 U.S.C. § 3729(a) (2012).

[44]    31 U.S.C. § 3730.

[45]    31 U.S.C. §§ 3729, 3730.

[46]    James B. Helmer, Jr., *False Claims Act: Incentivizing Integrity for 150 Years for Rogues, Privateers, Parasites and Patriots*, 81 U. CIN. L. REV. 1261, 1261-62 (2013); *see also* Pamela H. Bucy, *Private Justice*, 76 S. CAL. L. REV. 1, 61-63 (2002) (concluding that, because of its unique economic incentives, the False Claims Act has proven more effective than other federal "citizen suit" provisions in combating illegal government action through public interest litigation).

[47]    *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460 (5th Cir. 1977).

Furthermore, the record contains no evidence that Alaska Building brought the percentage-of-savings claim for an improper purpose. While the Agency acknowledged in its motion for sanctions that Rule 11 is intended to deter parties from "needlessly increas[ing] the cost of litigation," it did not argue that Alaska Building had such a purpose here; it argued only that "[Alaska Building's] request for relief in the form of 10% of the alleged savings . . . was not supported by existing law." And as noted, the superior court's sanctions order did not offer a reason for imposing sanctions other than that the percentage-of-savings claim was "frivolous."

In our view, Alaska Building's percentage-of-savings claim was a form of "creative advocacy." Without evidence that Alaska Building asserted the claim in order to delay, harass, or increase the costs of litigation, we cannot conclude that the claim by itself constitutes an "abuse of the judicial process."[48] We acknowledge that the claim stood little chance of success, and that a competent attorney would recognize the claim's tenuousness before filing it. But as the commentary to the Alaska Rules of Professional Conduct explains, an "action is not frivolous even though the lawyer believes that the client's position will ultimately not prevail."[49] We do not interpret Rule 11 to impose a greater obligation on counsel than do the Rules of Professional Conduct. Because the percentage-of-savings claim was based on "a non-frivolous argument . . . for establishing new law," it was an abuse of discretion to sanction Alaska Building for bringing the claim.

---

[48] For example, a novel claim that in the abstract represents only "creative advocacy" may become an abuse of the judicial process if it is used to justify intrusive and otherwise irrelevant discovery. No such use of the percentage-of-savings claim is evident from the record in this case.

[49] Alaska R. Prof. Conduct 3.1, cmt.

## V.    CONCLUSION

We REVERSE the superior court's ruling that Alaska Building's percentage-of-savings claim was frivolous and REMAND to the superior court so it may reexamine the fee award consistent with this opinion.[50]

---

[50]    We note that the attorney's fees award of $2,217.80 was consistent with the scheduled award of 20% under Rule 82(b)(2), which is what the Agency requested. But because the superior court simultaneously granted the Agency's motion for Rule 11 attorney's fees, we assume that the award includes those fees as well and may therefore require adjustment on remand.

BOLGER, Justice, dissenting.

Alaska Civil Rule 11 authorizes sanctions if a pleading or filing is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." This court has held that "[t]he Rule creates an objective standard of 'reasonableness under the circumstances,' and is intended to be more stringent than a mere 'good faith' formula."[1] In so holding, this court has largely adopted federal Rule 11 precedent, which defines a frivolous claim in violation of Rule 11 as one that has "absolutely no chance of success."[2] And because federal law allows for sanctions if claims meet this definition,[3] this court has adopted a standard that equates frivolity with a lack of merit.[4]

In this case, Alaska Building has never supplied an argument suggesting that its claim had any chance of success. In response to 716 West Fourth's motion to preclude this claim, Alaska Building merely argued that approval of this claim was "something the judiciary can do to address [the] corruption and the chilling of public

[1]    *Keen v. Ruddy*, 784 P.2d 653, 658 (Alaska 1989) (quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986)).

[2]    *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (noting that a violation of Rule 11 occurs "where the complaint has 'absolutely no chance of success under the existing precedent' " (quoting *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir.1987))); *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985) (noting that sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success"), *superseded by rule on other grounds as stated in Sorenson v. Wolfson*, No. 16-1224, 2017 WL 1043073 (2d Cir. Mar. 16, 2017).

[3]    *See Eastway*, 762 F.2d at 254.

[4]    *See Alaska State Emps. Ass'n v. Alaska Pub. Emps. Ass'n*, 813 P.2d 669, 672 (Alaska 1991) ("ASEA's position was not so devoid of merit as to justify the imposition of sanctions.").

interest litigation as a result of the Legislature's abrogation of [the] public interest litigant exception to [Alaska] Civil Rule 82." But saying that this claim was "something the judiciary can do" did not suggest a legal theory with any potential for success. Even the most outrageous claim could be characterized as "something the judiciary can do."

The superior court thus concluded that Alaska Building's claim was frivolous:

> Here, there is no statutory authority that would allow this court to create such an incentive, and [Alaska Building] does not provide any legal theory upon which this court could justify creating new law.

I agree with this conclusion. Alaska Building made a claim without any legal theory to support it, a claim with absolutely no chance of success.

Many Rule 11 decisions evaluate an attorney's conduct by comparing it to a hypothetical "reasonable" or "competent" attorney who, after a "reasonable inquiry" under the circumstances, would not bring a claim that was not "well grounded in fact," supported by existing law, or justified by "a good faith argument for the extension, modification or reversal of existing law."[5] As we recently explained:

> An attorney need not have engaged in subjective bad faith or willful misconduct to incur Rule 11 sanctions. . . . Rather than inquiring into an attorney's good faith, courts must determine "whether there was a reasonable basis for the attorney's signature at the time the paper was submitted." As a U.S. District Court has noted, "[w]here . . . a plaintiff has made no inquiry or has made an inquiry that has revealed no

---

[5]     *Eastway*, 762 F.2d at 254 (emphasis omitted) (footnote omitted) ("[S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.").

information supporting a claim, the inquiry is *ipso facto*[] not reasonable."[6]

Therefore, we must look at the inquiry results to determine whether there is a reasonable basis for an attorney's claim.

In the present case, Alaska Building's attorney did not uncover any reasonable basis for its claim by either research or inquiry. At his deposition, Alaska Building's attorney was asked about any statutory basis for Alaska Building's claim; he replied there was none. He specifically agreed that this was not a statutory *qui tam* claim. And when asked whether he had found common law support, he replied that he had not found any: "Well, not yet anyway. So . . . it's possible I'll come up with some [support], but I haven't found . . . any yet."

In my opinion, the record supports the superior court's decision. Alaska Building made up this claim without any legal research to support it. The claim itself has no legal basis, and thus had absolutely no chance of success. I would affirm the superior court's decision to grant a modest award of attorney's fees as an appropriate sanction to discourage this type of claim.

---

[6] *Kollander v. Kollander*, ___ P.3d ___, Slip Op. No. 7185 at 9 (Alaska July 21, 2017) (second, third and fourth alterations in original) (footnotes omitted) (first quoting *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1228 (Alaska 1992); then quoting *Foster v. Michelin Tire Corp.*, 108 F.R.D. 412, 415 (C.D. Ill. 1985)).